IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TIFFANY REGINA RINGER, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO. |
| | : 1:25-CV-3959-SEG-JSA |
| BANK OF AMERICA, N.A., | : |
| | : |
| Defendant. | : |

**O R D E R**

On July 17, 2025, Defendant removed this action from state court and simultaneously filed a Motion to Dismiss [2]. Plaintiff, *pro se*, subsequently filed a Motion to Remand to State Court [6]. On November 5, 2025, the undersigned issued an Order and Non-Final Report and Recommendation that recommended that Plaintiff's Motion to Remand be denied. Although the undersigned did not recommend any adjudication of Defendant's Motion to Dismiss, the undersigned identified numerous legal deficiencies with Plaintiff's Complaint and ordered Plaintiff to amend or likely face a future recommendation of dismissal.

This separate Order does not relate to the *merits* of the Motion to Dismiss or of the Complaint. Rather, by this separate Order, the Court identifies several concerns with the accuracy of citations in Defendant's Memorandum of Law [2-1] ("Defendant's Brief"). Upon careful review of Defendant's specific case citations, several appear to be inaccurate, include incorrect docket and/or reporter numbers,

and/or quote sentences that do not exist in the opinion. These apparently inaccurate citations were not material to the Court's Order and Non-Final Report and Recommendation, as the Court independently determined based on well-established legal principles that the Complaint contained obvious deficiencies requiring at least repleading. But the Court must raise these concerns as to the existence or accuracy of Defendant's citations and case quotations under its authority to supervise the integrity of filings in this case and recommend or apply discipline if appropriate.

We all hopefully know that lawyers, and non-represented parties proceeding *pro se*, cannot misstate facts or law or legal citations to the Court. Federal Rule of Civil Procedure Rule 11(b) requires, in applicable part, that all legal contentions to the Court by lawyers and non-represented parties "be warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). Violations of this rule are subject to appropriate sanctions, monetary or otherwise, which may be imposed on the Court's own initiative. *See* Fed. R. Civ. P. 11(c).

Further, even beyond any specific rules, "[i]t has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812)). These inherent powers include the ability to enforce rules of professional ethics and

duties of candor, and to discipline members of the bar and others who appear before the Court for violations. *Id*. Indeed, doing so is necessary to fulfill the Court's obligations to secure "the just, speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1.

Of course, isolated and unintentional typographical or similar errors in citations or quotations can happen and do not usually present serious problems. But unfortunately, with the advent of generative artificial intelligence-assisted tools, more cases of false, inaccurate or downright non-existent citations are infecting the legal system and threatening serious damage to the integrity and efficiency of the judicial process. These threats force the Courts to make inquiries where concerns appear and take action if appropriate to remedy abuses and deter future ones.

The most major discrepancies that appear to the Court[1] in Defendant's Brief [2-1] are as follows:

<u>Heath</u>. Defendant quotes "*Heath v. Federal National Mortgage Association*, No. 1:12-CV-4172-RWS, 2013 WL 12144786, at *3 (N.D. Ga. Sept. 18, 2013)," for the proposition that "the court denied a quiet title claim because the plaintiff 'ha[d] not paid off the promissory note' and thus 'failed to 'do equity.'" *See* Def.'s Br. [2-1] at 8.

---

[1] The Court has used Westlaw as its source for obtaining the case decisions cited herein.

Upon review, however, the case captioned "*Heath v. Federal National Mortgage Association*" in the Northern District of Georgia is case number 4:12-CV-0262-HLM, not 1:12-CV-4172-RWS, and the decision likely referred to is dated Jan. 11, 2013, not Sept. 18, 2013, and indexed as 2013 WL 12099647, not 2013 WL 12144786.

Moreover, the wording "failed to 'do equity'" does not exist. The true wording is very close, but not the same: "'Because [plaintiff] has not paid off the promissory note, she has **not done equity** and was not entitled to the equitable remedy of cancellation of the security deed.'" *Heath v. Fed. Nat'l Mortg. Ass'n*, No. 4:12-CV-00262-HLM, 2013 WL 12099647, at *4 (N.D. Ga. Jan. 11, 2013) (quoting *Taylor, Bean & Whitaker Mortg. Corp. v. Brown*, 276 Ga. 848, 850 (2003)) (emphasis added).

<u>Elliot</u>. Additionally, Defendant argues that Plaintiff's "reliance on UCC § 3-311's 'accord and satisfaction' provisions is . . . misplaced because mortgages and security deeds are not negotiable instruments governed by Article 3 of the UCC." *See* Def.'s Br. [2-1] at 12. In support, Defendant cites *SEC v. Elliot* at page 1569, footnote 15, and quotes that footnote as stating, "A mortgage does not meet the UCC definition of an instrument. As discussed previously, a mortgage merely provides notice of payment and does not evidence a right to payment of money." *See id*. (citing *S.E.C. v. Elliott*, 953 F.2d 1560, 1569 n.15 (11th Cir. 1992)).

However, there are only 9 footnotes in *Elliot* (not 15), and the quote reproduced above does not appear to exist within the case.

<u>Montia</u>. Defendant argues in its brief that "Plaintiff's Complaint contains no verification whatsoever. Despite being titled a 'Verified Petition,' the document lacks any sworn statement, notarization, or attestation under penalty of perjury. This complete absence of verification renders the petition 'facially noncompliant' with O.C.G.A. § 23-3-62." Def.'s Br. [2-1] at 7.

In support, Defendant makes the following statement: "In *Montia v. First-Citizens Bank & Trust Company*, 341 Ga. App. 867, 869 (2017), the Court of Appeals stated unequivocally: 'A petition that does not meet the statutory requirements, including verification, is subject to dismissal because no evidence introduced within the framework of a noncompliant petition could sustain a grant of relief.'" Def.'s Br. [2-1] at 6.

However, no such quote appears to exist within *Montia*. The word "verification" never appears in the case, upon the undersigned's review. Also, the court held that the petitioner failed to satisfy the requirements of O.C.G.A. § 23-3-62 because her petition pled only legal conclusions, rather than facts, and presented other flaws. *See Montia*, 341 S.E.2d at 909–10. *Montia* did not discuss the need for the petition to be "sworn," "notarized," or "attested to" under penalty of perjury as Defendant suggests.

GHG. For the same proposition, Defendant purports to quote from *GHG, Inc. v. Bryan*. *See* Def.'s Br. [2-1] at 6 (quoting *GHG, Inc. v. Bryan*, 275 Ga. 336, 337 (2002) as holding that "a petition to quiet title that is facially noncompliant with statutory requirements is subject to dismissal"). But, again, it does not appear that this quote exists in the case. Instead, the closest language that the undersigned can find in *GHG* states: "a petition to quiet title must contain a particular description of the land, a specification of the petitioner's interest in the land, and whether that interest is based upon a written instrument, adverse possession, or both. In addition, the petition should be accompanied by a plat of survey and copies of any written instruments upon which petitioner's interest or that of an adverse claimant is based. OCGA § 23–3–62(c). A petition is subject to dismissal only when on the face of the pleadings it appears that it is in noncompliance with OCGA § 23–3–62." *GHG, Inc.*, 275 Ga. at 336.

Wright. Defendant quotes *Wright v. Wheatley*, 210 Ga. 35, 36 (1953)[2] as holding that "petitions for extraordinary equitable relief... must also be positively verified" and that "[d]efective verification... can lead to dismissal." *See* Def.'s Br.

---

[2] Normally, the Court utilizes the technically official and "Blue Book proper" Southeastern Reporter cites instead of the unofficial "Ga." cites to refer to Georgia state court decisions. In this case, however, to avoid confusion, the Court has generally used the citation system used in Defendant's Brief, which does not utilize the Southeastern Reporter. This is not intended to be a criticism but rather simply an explanation of a use of a different citation methodology than is usually used by the Court.

6

[2-1] at 7. Again, while many of the individual words in that quotation appear to exist in the decision in various other sentences, the Court cannot locate this particular quote. Indeed, *Wright* actually says something a bit different, that is, that "defective verification of such petition" would "'not as a matter of law demand its dismissal,' but that the petition might be retained in court and an injunction granted where 'other satisfactory proofs are submitted.'" *Wright*, 210 Ga. at 35–36 (quoting *Bracewell v. Cook*, 192 Ga. 678, 678 (1941)). In *Wright*, the petition was deemed to be not properly "verified" for the specific reason that the allegations in the petition were made based on "information and belief," as opposed to personal knowledge. *Id.* That appears to stop short of the argument made by Defendant here, which is that the Complaint in this case is defective because it lacks "any sworn statement, notarization, or attestation under penalty of perjury." Def.'s Br. [2-1] at 7.

<u>O.C.G.A. § 13-4-103.</u> Defendant argues that Plaintiff's attempts to satisfy a mortgage debt by furnishing money orders that bear "restrictive endorsements" do not constitute effective "accord and satisfaction" under Georgia law. *See* Def.'s Br. [2-1] at 10. Defendant cites O.C.G.A. § 13-4-103(b) in support, and quotes that provision as follows:

> The acceptance... of any check, draft, money order, or other written instrument which contains... language to the effect of 'payment in full'... shall not constitute an accord and satisfaction... unless one of the following is satisfied:
>
> (1) At the time of the tender of the check or draft there is a bona fide dispute or controversy existing between the parties as to the amount which is due; or

7

> (2) The check or draft is tendered pursuant to or in accordance with a plan or agreement made or entered into in advance between the creditor and the debtor for the settlement or compromise of the debt.

See Def.'s Br. [2-1] at 10.

However, the actual language of that provision, while substantively similar, does not read the same:

> Acceptance by a creditor of a check, draft, or money order marked "payment in full" or with language of equivalent condition, in an amount less than the total indebtedness, shall not constitute an accord and satisfaction unless:
>
>> (1) A bona fide dispute or controversy exists as to the amount due; or
>>
>> (2) Such payment is made pursuant to an independent agreement between the creditor and debtor that such payment shall satisfy the debt.

O.C.G.A. § 13-4-103(b).

Franklin. Defendant quotes *Franklin v. Cummings*, 181 Ga. App. 755, 756 (1987) as holding that "a creditor's acceptance of checks containing conditional language did not constitute accord and satisfaction in the absence of a preexisting bona fide controversy or an independent agreement." See Def.'s Br. [2-1] at 10–11. Again, while some of these words, and the essential concepts, appear in the decision, this quote does not. The quote appears to almost, but not exactly, match a Westlaw-supplied headnote and synopsis. In any event, such editorial summaries added by Westlaw employees are not part of the court's decision or holding.

Neal H. Howard & Associates. Defendant quotes *Neal H. Howard & Associates, P.C. v. Carey & Danis, LLC*, 244 F. Supp. 2d 1344, 1348 (N.D. Ga.

8

2003) as stating: "If a creditor accepts a conditional payment, 'they must accept the condition attached to the payment. They cannot alter the condition or reserve rights to further compensation after accepting the payment.'" *See* Def.'s Br. [2-1] at 11–12. Again, this exact quote does not exist. The closest that the undersigned can locate to this language is the following: "Simply put, when payment is made upon condition, *e.g.*, the condition that, if accepted, it will fulfill the debtor's obligation to the creditor, 'the acceptance of the payment carries with it the acceptance of the condition.'" *Neal H. Howard & Associates, P.C.*, 244 F. Supp. 2d at 1348 (quoting *Hartline-Thomas, Inc. v. H. W. Ivey Const. Co.*, 161 Ga. App. 91, 94, 289 S.E.2d 296, 299 (1982)).

<u>Hall</u>. Defendant quotes *Hall v. Bank South*, 186 Ga. App. 860, 861 (1988) for the statement: "a mortgage is a type of security interest with real property as collateral, rather than a payment of debt or promise to repay debt." *See* Def.'s Br. [2-1] at 13. Again, this quote does not appear in the published opinion on Westlaw.

<u>Springer.</u> Defendant quotes *Springer v. Wells Fargo Bank, N.A.*, 784 F. App'x 721, 723 (11th Cir. 2019) as affirming dismissal of similar mortgage-related claims based on so-called sovereign citizen arguments as "frivolous and without legal merit." *See* Def.'s Br. [2-1] at 14. While that decision affirmed the dismissal of meritless mortgage-related claims, the quote "frivolous and without legal merit" does not appear to exist in the decision as published on Westlaw.

\* \* \*

The undersigned has made no findings but simply, at this stage, identifies what appear to be discrepancies, so as to allow counsel to respond. Specifically, counsel for Defendant is **ORDERED TO SHOW CAUSE** in writing, within **TWENTY-ONE (21) DAYS** of the date of this Order, why the citations identified above were in fact accurate. Otherwise, counsel must explain the reasons for any inaccuracies, what steps will be implemented going further to prevent recurrence of such problems in this and other cases, and why sanctions should not be imposed as a remedial and/or deterrent measure. In doing so, among any other things counsel may wish to explain, counsel must specifically state, via sworn statement, whether ChatGPT or other A.I.-assisted tools, including those operated by major legal research databases, were used to prepare submissions and, if so, what steps were undertaken to ensure that any such submissions complied with Rule 11 and other ethical and professional obligations. *See* Fed. R. Civ. P. 11.

**IT IS SO ORDERED** this 6th day of November, 2025.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE