IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TIFFANY REGINA RINGER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No. |
| v. | ) | 1:25-cv-03959-SEG-JSA |
| | ) | |
| BANK OF AMERICA, N.A., | ) | Removed from Douglas Superior |
| | ) | Case No. 25CV01110 |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE**

Undersigned counsel for Defendant Bank of America, N.A. respectfully submits this response to the Court's Order dated November 6, 2025 [Doc. 10]. In that Order, the Court identified several concerns with the accuracy of citations in Defendant's Memorandum of Law [Doc. 2-1] ("Defendant's Brief") and directed counsel to show cause, in writing, why the citations identified were in fact accurate or to otherwise explain the reasons for any inaccuracies.

The Court is correct that the citations it identified in Defendant's Brief were inaccurate. The inaccuracies resulted from errors in the process counsel used to research and draft Defendant's Brief. They were not the result of counsel's use of ChatGPT or any other generative A.I.-assisted tool. Counsel's sworn declaration as

1

to these facts is attached as Exhibit A (Declaration of Danny D. Patterson, Jr., dated November 24, 2025).

Counsel and his law firm deeply regret these errors. Counsel and the law firm have worked extensively to understand how and why these errors occurred. This response will describe the process and decisions that caused or contributed to these errors and the corrective and remedial steps both counsel and the firm have implemented to prevent recurrence of similar problems. Further, this response will address the Court's inquiry as to why sanctions should not be imposed as a remedial and/or deterrent measure.

**I.    Undersigned Counsel Was the Sole Researcher and Drafter of Defendant's Brief and Did Not Use Any A.I.-Assisted Tools.**

The Court's Order directs counsel to state, via sworn statement, whether ChatGPT or other A.I.-assisted tools, including those operated by major legal research databases, were used to prepare submissions, and if so, what steps were undertaken to ensure that any such submissions complied with Rule 11 and other ethical and professional obligations. As stated in the declaration, counsel did not use ChatGPT or other A.I.-assisted tools in the research and drafting of Defendant's Brief. Ex. A, ¶ 4. Counsel further swears, under penalty of perjury, that counsel did not use any generative A.I. or other artificial intelligence large language model to research or draft Defendant's Brief or any other filings in this case. *Id*.

2

Further, counsel was the sole researcher and drafter of Defendant's Brief, and no other attorney or firm personnel conducted any legal research or drafted any portions of Defendant's Brief that contained the citation errors. Although a more senior lawyer on our team reviewed and edited Defendant's Brief before it was filed, the edits were principally stylistic and did not alter or add to the legal citations. Ex. A., ¶ 4. Counsel was solely responsible for drafting the errors in Defendant's Brief. And as discussed below, counsel did not cite check Defendant's Brief before it was filed or ask another team member to cite check. *Id.*, ¶ 9.

Counsel and the firm have attempted to recreate and understand the specific research and drafting process used in Defendant's Brief. This is complicated by the passage of time – counsel drafted the brief in July – and by the fact that counsel simultaneously was researching and drafting briefs in other cases. Ex. A, ¶ 5. The process set forth herein and in counsel's declaration describe counsel's best recollection and understanding of the facts related to the research and drafting of Defendant's Brief. However, counsel is certain that no generative A.I. or similar A.I.-assisted tools were used for any legal research or drafting. Instead, counsel researched Defendant's Brief using traditional research tools, including Westlaw to

3

locate cases. *Id*. ¶ 4.[1] Likewise, counsel drafted Defendant's Brief in counsel's own words without using any A.I.-assisted tools. *Id*. The inaccuracies were human errors, not A.I. "hallucinations." Counsel was and is aware of the risks of using generative A.I. in legal research and deliberately chose not to use any such tools.

## II.     The Inaccurate Citations Are the Result of Several Mistakes and Lapses in Counsel's Research and Drafting Process.

No single error resulted in the inaccurate citations the Court identified. Rather, a combination of factors contributed to these errors. None of these factors are offered as excuses. The inaccuracies should not have occurred. But it is important to counsel and the law firm to understand how these errors occurred so they can take necessary steps to prevent future errors.

Counsel joined McGuireWoods in May 2025 as a Staff Attorney. Ex. A, ¶ 2. Prior to joining McGuireWoods, counsel worked as an attorney since 2016, including work at several other law firms. *Id*. Counsel also worked as an in-house counsel and, briefly, as a solo practitioner. *Id*. When counsel joined McGuireWoods, counsel assumed responsibility for a docket of litigation cases in Georgia federal and

---

[1] The Court's Order specifically mentions "tools… operated by major legal research databases" in the context of A.I. [Doc. 10 at 10]. To clarify, counsel used Westlaw for legal research but did not use Westlaw's CoCounsel A.I. tool. The research was conducted via keyword searches and reading of the actual cases.

state courts. *See id*., ¶ 6. As a result, when defendant received a service copy of plaintiff's complaint in June 2025, counsel needed to conduct legal research on the specific issues raised in the *pro se* Plaintiff's complaint. Eager to make a favorable impression at his new firm, counsel undertook the legal research without seeking assistance. *Id*.

Counsel researched and drafted Defendant's Brief in July 2025. Ex. A, ¶ 6. At that time, counsel was the primary attorney handling other matters, including researching and drafting other briefs. *Id*. Despite these competing demands in a new position, counsel did not seek additional assistance in researching or drafting Defendant's Brief. In hindsight, counsel should have requested an extension or otherwise sought assistance on aspects of this work before filing.

A. **Counsel's Use of a Separate Working Document to Collect Case Excerpts, Notes and Summaries Likely Contributed to Citation Errors.**

As described in the sworn declaration, counsel conducted legal research using recognized legal databases and sources to find relevant cases and statutes. Ex. A, ¶¶ 4, 7. However, the process counsel used to collect and document legal citations was flawed. In conducting research, counsel collected pertinent passages or summaries from cases in a separate working document. *Id.*, ¶ 7. Counsel also included his own notes and summaries regarding the legal issues and arguments in the working

document. *Id*. Counsel's intent was to collect relevant cases and excerpts and counsel's own legal analysis in a single location for use in the actual brief. *Id.* Unfortunately, counsel now believes that this process allowed for mistakes. These mistakes include misidentifying the correct source of a particular statement, misattributing counsel's own paraphrasing or summary as an actual case quote, and, in a few instances citing a particular authority that does not directly stand for the proposition cited. Counsel's summary of these inaccuracies is described below.

### 1.  Misidentifying the Correct Source of a Particular Statement.

The Court identifies two citations that do not appear in the cited source. In each instance, the Court is correct that the statements attributed were inaccurately cited.

*S.E.C. v. Elliott*. First, as the Court noted, *S.E.C. v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) does not contain the statement quoted on page 12 of Defendant's Brief nor a footnote 15. *Elliott* does support the legal principle that courts distinguish between the note secured by real property, which is an instrument under the Uniform Commercial Code ("U.C.C."), and the security deed or mortgage, which "is not within the scope of the U.C.C," *see Elliott*, 953 F.2d at 1580-81, but counsel mistakenly characterized a general legal statement in the case supporting defendant's argument as a case quotation and miscited it. Counsel was not able to determine the

specific root behind the mistake that resulted in counsel citing to a footnote that is not in the *Elliot* case, but believes it is due to his combining pertinent passages or summaries from cases with his own notes in a separate working document. Ex. A, ¶¶ 6-8.

*Hall*. Second, the Court correctly notes that the quoted language on page 13 of Defendant's Brief is not contained in the cited source, *Hall v. Bank South, Washington County*, 186 Ga. App. 860 (1988). Counsel may have misattributed the statement to *Hall* instead of *Suntrust Bank v. Ruiz*, 648 Fed.Appx. 757 (2016), the case cited immediately before *Hall* on page 13 of Defendant's Brief.  Defendant's Brief quoted *Hall* as stating, "a mortgage is a type of security interest with real property as collateral, rather than a payment of debt or promise to repay debt." *Ruiz* contains a similar quote: "'A mortgage is a type of security interest with real property as the collateral[,]' not payment of a debt or a promise to repay a debt." *Ruiz*, 648 Fed.Appx. at 761 (quoting *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012)).

In both instances, counsel now believes that the manner of collecting case excerpts and later transposing them into the actual brief contributed to these errors. Counsel acknowledges and regrets these mistakes.

7

## 2. Misidentifying Counsel's Paraphrase or Summary as an Actual Case Quote.

Several other citation errors occurred because counsel used quotation marks when citing statements counsel paraphrased or summarized.

*Heath.* The Court correctly notes that counsel miscites and misquotes *Heath v. Federal National Mortgage Association*, No. 4:12-CV-00262-HLM, 2013 WL 12099647 (N.D. Ga. Jan. 11, 2013).  While *Heath* contains similar language to that quoted on page 8 of Defendant's Brief, counsel misquoted the case when he wrote that the opinion included the precise phrase "failed to 'do equity.'" Def.'s Br. [Doc. 2-1] at 8. Both the misplaced quotation marks and the incorrect citation are errors. Counsel does not recall the precise reason he made these errors, but it is clear that Defendant's Brief should have reflected counsel's summarization of the case holding instead of a direct quotation.

*GHG*. Likewise, counsel again mistakenly used quotation marks when summarizing certain language in *GHG, Inc. v, Bryan*, 275 Ga. 336, 337 (2002). The Court correctly explained that the case did not include the quoted language. Instead, Defendant's Brief used similar language that should not have been identified as a direct quote. *Compare GHG, Inc.*, 275 Ga. at 337 ("A petition is subject to dismissal only when on the face of the pleadings it appears that it is in noncompliance with OCGA § 23-3-62"), *with* Def.'s Br. [Doc. 2-1] at 6 ("holding that 'a petition to quiet

title that is facially noncompliant with statutory requirements is subject to dismissal.'").[2]

O.C.G.A. § 13-4-103(b). Counsel also misstated certain language in describing O.C.G.A. § 13-4-103(b), the statute governing when acceptance of a check, money order or other draft marked "payment in full" constitutes accord and satisfaction under Georgia law. While the statute uses the phrase "payment in full" in quotation marks, as identified in Defendant's Brief, counsel drafted a summary of the statute, and then mistakenly included it as a quotation. While counsel's summary accurately reflected the terms of the statute, it does not match the statute's exact language and counsel erred in setting it forth in Defendant's Brief as a direct quotation.

*Franklin*. Counsel also erroneously used quotation marks when summarizing the holding in *Franklin v. Cummings*, 181 Ga. App. 755, 756 (1987). As the Court stated, no such quote appears in the case, but the summary closely tracks a Westlaw headnote to that case as the Court noted. *Compare* Def.'s Br. [Doc. 2-1] at 11-12 ("Similarly, in *Franklin v. Cummings*, 181 Ga. App. 755, 756 (1987), the court held

---

[2] Further, counsel acknowledges that while *GHG, Inc.* contains similar language to that erroneously quoted in Defendant's Brief, that language does not reflect the specific holding in that case. Although the court in *GHG, Inc.* indicated that the petition to quite title must comply with all requirements of the statute, the court held that the petition at issue was not subject to dismissal. *GHG, Inc.*, 275 Ga. at 337.

that a 'creditor's acceptance of checks containing conditional language did not constitute accord and satisfaction in the absence of a preexisting bona fide controversy or an independent agreement.'"), *with Franklin* Headnote [1] ("Creditor's acceptance of checks containing conditional language providing that check was 'payment in full' with 'no balance due' did not constitute accord and satisfaction in the absence of evidence of a preexisting bona fide controversy concerning the amount owed, or an independent agreement that acceptance of the check would satisfy the debt."). Counsel believes he likely and erroneously copied the *Franklin* headnote into his working document without identifying it as such, then later inserted similar language into Defendant's Brief when describing *Franklin*'s holding.

*Neal H. Howard & Associates*. Counsel also erred in using quotation marks when citing *Neal H. Howard & Associates, P.C. v. Carey & Danis, LLC*, 244 F.Supp.2d 1344, 1348 (N.D. Ga. 2003). As the Court explained, the quoted statement from Defendant's Brief is not found in that case but the principle is consistent with similar language in the opinion. *Compare* Def.'s Br. [Doc. 2-1] at 11-12 ("If a creditor accepts a conditional payment, 'they must accept the condition attached to the payment. They cannot alter the condition or reserve rights to further compensation after accepting the payment.'"), *with Neal H. Howard & Assoc.*, 244

F.Supp.2d at 1348-1349 ("Simply put, when payment is made upon a condition, e.g., the condition that, if accepted, it will fulfill the debtor's obligation to the creditor, 'the acceptance of the payment carrier with it the acceptance of the condition.'") (quoting *Hartline-Thomas, Inc. v. H.W. Ivey Constr. Co., Inc.*, 161 Ga.App. 91, 94, 289 S.E.2d 296, 299 (1982)), 1349 ("Georgia law clearly provides that a creditor faced with a payment of less than the full amount of a debt must either reject the payment entirely or accept it along with the condition. He may not accept the check as partial payment then try to reserve his rights to further compensation by placing restrictions on his acceptance."). Again, Defendant's Brief attempted to accurately summarize the case holding but counsel erred in using quotation marks to indicate that the case included that exact quote.

Each of these citation errors involve counsel's use of quotation marks to reflect counsel's own summaries of case or statutory language. As noted above, counsel attributes these errors in part to copying case excerpts into a separate working document in which counsel also included his own notes and analysis, and later inserting these into Defendant's Brief. In that process, counsel failed to clearly mark the excerpts in his working document to distinguish between direct case quotations and counsel's paraphrased notes or summaries. Counsel believes these statements largely track the language and legal principles stated in these authorities.

11

They were not intended to mislead the Court or Plaintiff. Nonetheless, counsel erred in failing to ensure the accuracy of each statement and in using quotation marks when not directly quoting from the cited sources.

### 3. Authority Does Not Directly Support the Cited Proposition.

In reviewing Defendant's Brief following the Court's Order, counsel identified instances in which the citations do not directly or fully support the stated proposition. These are deeply troubling to counsel, who had no intention to mislead the Court or Plaintiff, or misstate Georgia law.

*Montia*. Counsel miscited *Montia v. First-Citizens Bank & Trust Company*, 341 Ga.App. 867, 869 (2017). As the Court noted, *Montia* does not include the quotation cited on page 6 of Defendant's Brief – "A petition that does not meet the statutory requirements, including verification, is subject to dismissal because no evidence introduced within the framework of a noncompliant petition could sustain a grant of relief." *Montia* contains a similar quote – "A petition that, on its face, appears to be in noncompliance with OCGA § 23-3-62 is subject to dismissal because, '[i]n that case, no evidence which might be introduced within the framework of the [petition] could sustain a grant of…relief.'" *Montia*, 341 Ga.App. at 869 (quoting *GHG, Inc. v. Bryan*, 275 Ga. 336 (1), 566 S.E.2d 662 (2002)). But critically, the actual quotation did not mention "verification," nor was the decision

in *Montia* based on the lack of verification. The mistake was not intentional as counsel understood that a petition to quiet title must comply with each requirement of the statute – including verification.

*Wright*. Counsel cited *Wright v. Wheatley*, 210 Ga. 35, 36 (1953) as holding that "'petitions for extraordinary equitable relief…must also be positively verified' and that '[d]effective verification…can lead to dismissal.'" Def.'s Br. [Doc. 2-1] at 7. The Court correctly noted that the case does not include these specific quotes even though it contains similar words. *Wright* states in part that,

> "Code, § 81-110 requires that 'Petitions for a restraining order, injunction, receiver, or other extraordinary equitable relief shall be verified positively by the petitioner or supported by other satisfactory proofs.' While this court has held that the defective verification of such petition by the plaintiff would 'not as a matter of law demand its dismissal,' but that the petition might be retained in court and an injunction granted where 'other satisfactory proofs are submitted,' *Bracewell v. Cook*, 192 Ga. 678, 16 S.E.2d 432, and that a petition positively verified by the attorney for the plaintiffs would be 'supported by other satisfactory proofs', *Boston Mercantile Co. v. Ould-Carter Co.*, 123 Ga. 458, 51 S.E. 466, 469; *Kilgore v. Paschall*, 202 Ga. 416, 419, 43 S.E.2d 520, …"

*Wright*, 210 Ga. at 35.

Counsel erred not only in using quotation marks to reflect counsel's own summation of the case but in characterizing the court's language. As the Court explained, *Wright* states that a defective verification would not as a matter of law demand its dismissal.

13

*Springer*. Finally, counsel cited *Springer v. Wells Fargo Bank, N.A.*, 784 Fed.Appx. 721, 723 (11th Cir. 2019) for the proposition that federal courts have consistently and emphatically rejected sovereign citizen theories. While courts have consistently rejected theories similar to those asserted by Plaintiff,[3] the citation was in error. As the Court explained, the quote "frivolous and without legal merit" does not appear in *Springer* and though the *Springer* court affirmed the dismissal of meritless claims brought by mortgagors, the case did not explicitly refer to "sovereign citizen" theories. Counsel apologizes for these unintentional errors and has taken remedial measures to prevent future mistakes.

**B.    Counsel Failed to Conduct a Cite Check Before Filing Defendant's Brief.**

The errors and inaccurate citations described above were not corrected because counsel did not conduct a cite check before finalizing and filing Defendant's

---

[3] *See, e.g., McKay v. U.S. Bank*, No. 14-CV-872, 2015 WL 5657110, at *2 (M.D. Ala. Sept. 24, 2015) (denying plaintiffs' request for declaratory judgment that the defendant was not the real mortgage holder and to quiet title based upon the plaintiffs mailing of a "notarial presentment" and a "notarial notice of Dishonor" to the defendant bank); *Barrows v. Bank of Am., NA*, No. 8:14-CV-2121-T-33TGW, 2014 WL 5690499, at *2 (M.D. Fla. Nov. 4, 2014) (dismissing the borrower plaintiffs' quiet title claim against the defendant lender/mortgagee, holding that the defendant's failure to respond to plaintiffs' "notarial presentment" for proof of the validity of the mortgage and assignment was "legally insufficient to create a cloud on their title").

14

Brief. A thorough cite check would have identified the discrepancies and allowed for correction before filing Defendant's Brief.

Counsel did not check the citations himself before filing, nor ask a colleague or paralegal to complete a cite check. Ex. A, ¶ 9. Counsel is an experienced attorney but was working under time constraints related to this case and other matters counsel was primarily handling in July 2025. *Id*., ¶ 6. Counsel was new to the law firm and eager to show his ability to handle these matters efficiently, effectively, and independently. *Id*. Counsel realizes that these facts do not diminish his professional responsibilities or otherwise excuse the errors in drafting Defendant's Brief or the decision not to complete a formal cite check himself or seek assistance from within the firm. Rather, counsel includes this information to provide the Court with a full explanation of factors that he believes contributed to the errors.

In sum, the inaccurate citations resulted from a combination of human errors: a flawed method for collecting case citations and summarizing legal research, failure to allocate the necessary time to fully research, analyze and review each case and citation for accuracy, not seeking assistance in conducting a formal cite check before filing, and not seeking help from within the firm at a time when counsel was new and working on a number of different matters with multiple deadlines. In response

15

to the Court's Order, counsel has reflected extensively on how and why these events occurred and made changes to prevent any recurrence, as described below.

**III.   Counsel Has Taken Remedial Measures to Prevent Any Recurrence.**

Counsel is committed to ensuring that no future filings, in this or any other case, contain inaccuracies like those identified in the Court's Order. As a result, counsel had taken the following steps in response to the Court's Order:

**A.  Counsel Will No Longer Use a Working Document Containing Both Case Excerpts and Counsel's Notes.**

Counsel intended to use a working draft document to collect case research in one location. However, counsel now understands that this process led to errors in accurately quoting cases, identifying the correct source of legal authority, and distinguishing between case holdings and counsel's summaries or research notes. Going forward, counsel will alter his research and drafting process to ensure that case quotations and citations are not comingled in the same working document, and that all case quotations are verified when they are inserted into a legal brief. Ex. A, ¶ 13. Counsel is confident that this change will avoid the unintentional citation errors that occurred in researching and drafting Defendant's Brief.

## B. Counsel Will Conduct a Separate Cite Check Before Any Future Filings.

Going forward, counsel will personally verify each citation in a pleading before filing and ensure that another professional completes a cite check. Ex. A, ¶ 13. Each quoted phrase will be checked against the original authority *letter-for-letter*. Each case citation will be verified for correct case name, reporter, year, and all pinpoint cites and footnotes. No quote will remain in the document unless it has been confirmed by reviewing the original source. Counsel will allocate time specifically for cite-checking as part of the research and drafting process – regardless of workload or upcoming deadlines.

## C. Counsel Will Take Greater Care in Characterizing or Quoting Legal Authorities to Ensure Accuracy.

While counsel's process contributed to these errors, counsel acknowledges that certain inaccuracies resulted from a failure to distinguish counsel's analysis or summaries from the specific language and holdings of cases and statutes cited in Defendant's Brief. Therefore, counsel will more closely scrutinize cases to ensure that legal principles are taken from the case body and not headnotes, syllabuses or summaries. Ex. A, ¶ 13. Counsel also will confirm the specific holding of each case in comparison to the legal principle(s) for which it is cited. Counsel will only use quotation marks after verifying the exact language of the case or statute. And counsel

17

will clearly distinguish between counsel's own analysis and summary of the case holdings or legal principles from direct case quotations.

### D. Counsel Will Seek Assistance as Needed to Correct Drafting Errors and Ensure Accurate and Timely Filings.

These errors were avoidable had counsel taken the steps outlined above. Counsel also acknowledges that he should have sought assistance from within his firm. At a minimum, counsel could have sought assistance in conducting a final cite check of Defendant's Brief. Counsel has practiced law for nearly a decade and is an experienced litigator. But in this instance, counsel should have sought assistance before finalizing and filing Defendant's Brief. Counsel will seek appropriate support under similar circumstances in the future.

### E. Counsel Has Implemented a Pre-Filing Checklist for Filings.

To institutionalize these lessons, counsel has created a pre-filing checklist to verify the research, drafting and cite checking process for future filings. Ex. A, ¶ 13. The checklist includes items such as: verify every quotation against the original source, check that case citations (names, reporters, pin cites) are correct and official, ensure no paraphrased material is in quotations, and ensure all assertions of law are supported by cited authority, among others. With this approach, counsel will be reminded each time of this incident and the importance of not repeating it.

18

By implementing the measures above, counsel is confident that the type of discrepancies identified in the Court's Order will not recur. Counsel is genuinely embarrassed by these errors and any harm it has or will cause the Court or parties. Counsel will learn from this experience and significantly improve his practices. The Court, and all parties, require filings that are accurate and trustworthy. While counsel's errors were not the result of using A.I.-assisted tools, counsel acknowledges the Court's admonition that "false, inaccurate or downright non-existent citations are infecting the legal system and threatening serious damage to the integrity and efficiency of the judicial process." [Doc. 10 at 3]. Counsel takes these steps to ensure the accuracy of the legal arguments and authorities in all future filings.

## IV.    Counsel's Statement as to Why Sanctions Should Not Be Imposed.

Counsel acknowledges the Court's authority to impose sanctions under Federal Rule of Civil Procedure 11 and the Court's inherent powers as described in the Court's Order. Respectfully, counsel requests that the Court not impose any sanctions in this instance. The Court's goals of upholding the integrity of the judicial process and deterring future missteps can be achieved without imposing sanctions, because counsel has already taken thorough remedial action in response to the Court's Order.

**A.    Counsel's Inaccurate Citations Were Not Willful nor the Result of Bad Faith.**

Counsel deeply regrets the errors identified in the Court's Order. None resulted from any bad faith or intent to mislead the Court or Plaintiff. Counsel has explained both in this response and his sworn declaration how and why these mistakes occurred to the best of his knowledge and recollection. This was not a situation of *knowingly* citing or quoting non-existing cases or otherwise fabricating legal principles. Through the Court's diligence, fortunately these errors were identified and were not material to the Court's Order and Non-Final Report and Recommendation. Counsel regrets these errors but assures the Court they were not the product of any intentional or bad faith attempt to mislead the Court or Plaintiff, or to otherwise gain an unfair advantage in this matter.

**B.    Counsel Has Taken Remedial Measures in Response to the Court's Order to Prevent Recurrence.**

Upon receiving the Court's Order, counsel immediately set about reviewing Defendant's Brief to understand how and why these errors occurred. As described in this response and supporting declaration, counsel identified errors in the research and drafting process that contributed to the inaccuracies the Court described. Counsel has put into place new procedures for research, drafting, and cite checking

future pleadings to avoid any recurrence. Counsel is committed to ensuring that these types of mistakes do not happen again.

In this instance, the very fact of being ordered to show cause, and the possibility of sanctions, have had a profound deterrent effect on counsel. Further, counsel has had extensive discussions with his supervisor and others at the firm about these matters and the firm has removed counsel from work on pending matters for all clients while he is addressing these issues. The firm is also reviewing work counsel performed in other cases including previously filed legal briefs. Ex. A., ¶ 19. This experience has been chastening to say the least. Counsel respectfully submits the Court's valid interests in remediation and deterrence can be addressed through this show cause process and counsel's corrective actions, without imposing sanctions.

### C.      Counsel Has Not Previously Been Sanctioned or Disciplined by Any Court or Regulatory Authority.

This incident is the first time in his career that counsel has been subject to a show cause order or had his legal citations called into question before any tribunal. Ex. A., ¶ 18. Counsel has been a member of the Georgia Bar in good standing since 2016. *Id.*, ¶ 2. Counsel has never been sanctioned or disciplined by any court or disciplinary body. *Id.*, ¶ 18. Counsel acknowledges that none of these facts excuse the citation or other inaccuracies identified in the Court's Order. But counsel

respectfully asks this Court to consider these facts in determining whether sanctions are appropriate or necessary as a remedial or deterrence measure.

Counsel respectfully urges the Court to find that he has shown cause why sanctions should not be imposed.

## V.    Conclusion

Counsel apologizes to the Court for the citation errors in Defendant's Brief. Counsel understands that even unintentional inaccuracies can undermine the integrity and efficiency of the judicial process. In this instance, counsel's errors were not the result of using A.I.-assisted tools or relying on non-existing case law and authorities. Through this response, counsel has endeavored to fully explain each error, to outline the steps taken to prevent any recurrence, and to assure the Court of counsel's continued commitment to candor and accuracy.

In light of the explanations provided and the remedial actions undertaken, Defendant respectfully requests that the Court accept this response and deem the Order to Show Cause satisfied, without imposing sanctions.

Respectfully submitted this 25th day of November, 2025.

/s/ Danny D. Patterson, Jr.
Danny D. Patterson, Jr.
Georgia Bar No. 941731
McGuireWoods LLP
1075 Peachtree Street, NE
35th Floor

22

Atlanta, Georgia 30309-3900
(404) 443-5655 (Telephone)
dpatterson@mcguirewoods.com
*Attorney for Defendant Bank of America,*
*N.A.*

## CERTIFICATE OF SERVICE, FONT AND MARGINS

I hereby certify that on November 25, 2025, I electronically filed the foregoing

***DEFENDANT'S COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE*** and

its attachment with the Clerk of the Court using the CM/ECF System which served

a copy of the same on all counsel of record and to the following by First-Class Mail,

postage prepaid, addressed to:

Tiffany Regina Ringer
2598 Grayton Loop
Villa Rica, GA 30180-6702
*Plaintiff Pro Se*

I further certify that I prepared this document in 14-point Times New Roman

font and complied with the margin and type requirements of this Court.

*/s/ Danny D. Patterson, Jr.*
Danny D. Patterson, Jr.
Georgia Bar No. 941731
McGuireWoods LLP
1075 Peachtree Street, NE
35th Floor
Atlanta, Georgia 30309-3900
(404) 443-5655 (Telephone)
dpatterson@mcguirewoods.com
*Attorney for Defendant Bank of America, N.A.*