IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TIFFANY REGINA RINGER, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO. |
| | : 1:25-CV-3959-SEG-JSA |
| BANK OF AMERICA, N.A., | : |
| | : |
| Defendant. | : |

**ORDER AND NON-FINAL REPORT AND RECOMMENDATION ON**

**ISSUE OF ATTORNEY DISCIPLINE**

This matter is before the Court on its Order to Show Cause [10], dated November 6, 2025, which directed Defendant's counsel to explain numerous citation inaccuracies in Defendant's Memorandum of Law in support of its Motion to Dismiss, and to show cause why sanctions should not imposed. Defendant in this case is represented by Danny Patterson, Jr. of the McGuire Woods LLP law firm ("Counsel" or "Mr. Patterson"). Counsel responded to the Court's Order to Show Cause on November 25, 2025 [12], along with a sworn Declaration [12-1].

**I.    FINDINGS OF FACT**

Mr. Patterson admits to all of the inaccuracies identified by the Court in its Order to Show Cause. The Court therefore finds, as unopposed, that Defendant's Memorandum of Law in Support of its Motion to Dismiss contained all of the

numerous quotation and citation errors as detailed more specifically in the Order to Show Cause [10].

Mr. Patterson, however, denies that these errors resulted from the use of any AI-assisted software tools (which Mr. Patterson denies using at all). Instead, Mr. Patterson states that the errors resulted from his lack of care in transposing his manual research notes about cases into the brief. According to Mr. Patterson, through haste and lack of double-checking citations, various phrases that were simply his own paraphrasing of cases or other authorities were mistakenly presented to the Court as verbatim quotations. Mr. Patterson assures the Court that these errors were unintentional, and that corrective measures are being undertaken in this and other cases to prevent such errors going forward. Among other things, Mr. Patterson states that he will be changing his methodology of paraphrasing cases in manual notes and also will be using a paralegal to cite-check citations.

The Court has considered Mr. Patterson's sworn declaration and in the totality of the circumstances finds that the quotation and citation errors were unintentional and were the result of mere carelessness. After all, as the Court noted in the Order to Show Cause itself, the errors were mostly immaterial to the issues raised in the Motion to Dismiss, and the citations were mostly legally accurate. As the Court explained in its Order and Report and Recommendation [8] on the Motion to Dismiss, Plaintiff's Complaint clearly fails to state a claim. There was little need or

incentive to fabricate citations to the Court to demonstrate such plain deficiencies, and the Court is assured that Mr. Patterson did not intend to do so.

Although any lack of use of ChatGPT or other generative AI-assisted technology is not exonerating, the Court also accepts Mr. Patterson's denials in those regards. The cases miscited in the Memorandum of Law were not "hallucinated" and, as noted above, mostly contained language similar in substance to Defendant's citations. While these errors could have been generated by AI, they are also consistent with Mr. Patterson's explanations. In the end, however, the lack of due care in submitting materials to the Court remains the principal problem, with or without the use of AI.

## II.  DISCUSSION

Federal Rule of Civil Procedure 11(b), along with other legal, ethical and professional obligations on attorneys (and in some cases unrepresented parties), "imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 47 (1991) (citations omitted). In other words, negligence that leads to even unintentional false quotations, citations or inaccurate factual or legal assertions can be serious violations and are subject to discipline or other consequences. In this case, Mr. Patterson does not dispute, and the Court simply must find, that the submission of Defendant's Memorandum of Law in support of its Motion to Dismiss violated Rule 11 and other

related obligations, for all of the reasons explained in more detail in the Order to Show Cause.

> As other courts have explained, even where lawyers or unrepresented parties:
>
> accept responsibility and apologize profusely, much damage is done. The opposing party expends resources identifying and exposing the fabrication; the court spends time reviewing materials, holding hearings, deliberating about sanctions, and explaining its ruling; the substance of the case is delayed; and public confidence about the trustworthiness of legal proceedings may be diminished.

*Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1257 (N.D. Ala. July 23, 2025).

The Court does not relish recommending sanctions, particularly for unintentional errors. But the Court must, considering all circumstances, assess sanctions or consequences if necessary to achieve the ends of justice, and/or to deter future violations by the specific counsel or law firm responsible in that case or other lawyers, firms, and unrepresented parties more generally.

In this case, the opposing party expended no resources on this issue, as Plaintiff is *pro se* and did not identify the inaccuracies. But that counsel was careless in a case with a *pro se* adversary is, if anything, an aggravating factor. *Pro se* parties are more likely to already perceive that the legal system is not equally available to them, that lawyers take advantage of their unrepresented status, and that Courts are more prone to believe or favor lawyers over them. These perceptions are damaging to the credibility and image of the judicial system, and they are worsened where attorneys are caught making false assertions or cutting corners in opposing a *pro se*

case. Perhaps most concerningly, citation inaccuracies are far less likely to be uncovered by a *pro se* adversary than by an opposing lawyer. That there is a greater likelihood of getting away with carelessness (or worse) in a *pro se* case means, for deterrent purposes, that greater consequences must be imposed where such violations are exposed.

Moreover, the lack of resources expended by Plaintiff in this case simply means that the Court bore the brunt of the time and effort to double, triple and quadruple check the citations at issue, and undertake legal research on this side issue unrelated to the merits. This was to the detriment of the prompt adjudication of the merits of this case as well as the many other cases pending before the Court.

Unfortunately, the age of artificial intelligence has greatly increased the prevalence of false legal and factual assertions in legal submissions. This is a tremendous threat, as it erodes confidence in the judicial system and bogs the Courts and practitioners down in policing citations to a far greater extent than had previously been the case. AI may not ultimately have been at the core of the errors submitted here. But Courts must take careless citation errors even more seriously in the current environment to send the necessary message of deterrence to the legal community and unrepresented parties.

Another aggravating factor that the Court considers is the large number of false citations in this case, which were laid out in detail in the Order to Show Cause [10]. This was not a case of a typographical-type error or a couple of small

inaccuracies. The Court identified numerous problems in several case citations, and at least one lengthy supposed block quotation from a statute that was almost entirely paraphrased.

On the other hand, while the lack of bad faith or intent is not exonerating, it remains obviously relevant to mitigate the severity of any negligence. Also mitigating on the facts of this case is that the quotation and citation errors were mostly immaterial to the legal merits of the arguments presented to the Court.[1] The Court also considers that Mr. Patterson is a relatively new, non-partner employee of a large law firm, McGuire Woods, and has already faced and may face additional repercussions at the firm for this issue being raised by the Court. Mr. Patterson indicates that he has already been at least temporarily relieved of other case responsibilities while these issues are being resolved, and is being subjected to additional review and oversight. Those are not light consequences for a new employee and mid-career lawyer. Specific deterrence as to Mr. Patterson and even general deterrence as to lawyers in similar situations at other large firms is already

---

[1] One exception to the legal immateriality of the citations is that, as explained in the Order to Show Cause [10] at 5–7, certain quotations in the Memorandum of Law overstated the specific need for a petition to quiet title to include "sworn," "notarized" or "attested to" statements in support. These assertions were not supported by the authorities cited. Nevertheless, as explained in its Order and Report and Recommendation [8] on the Motion to Dismiss, the Court ultimately agreed with Defendant that the Complaint as originally pleaded failed to state a claim for the quiet title remedy even without any "attestation" or "notarization" requirement.

6

at least partially achieved by the public reprimand effect of the combination of the Court's Order to Show Cause and this Report and Recommendation.

Finally, Mr. Patterson attests that he has never previously been sanctioned or disciplined or accused in any similar fashion of violations. The Court has corroborated these statements insofar as a search in the Westlaw databases and the records of public discipline on the State Bar of Georgia website reveal no prior issues.

Mr. Patterson urges the Court to impose no consequences beyond the personal embarrassment and professional impacts already resulting from the Order to Show Cause. As explained above, the Court understands that the Order to Show Cause itself has likely created reputation and other problems for Mr. Patterson with his current employer and recognizes that these are serious consequences with remedial and deterrent effects. The Court credits Mr. Patterson's assurances they he will engage in more care going forward and finds that he has been personally deterred from violations in this and in future cases.

But while the Court does not wish to impose additional consequences, the principles of *general* deterrence unfortunately require that it do so. In other words, the Court must be concerned with the message sent to other lawyers, firms and non-represented parties as to the consequences of cutting corners, by using tools such as ChatGPT or even AI modules offered by reputable legal research databases without adequate care, or otherwise failing to verify the accuracy of citations and assertions

7

in legal filings. Allowing this issue to pass with nothing more than an Order to Show Cause might fail to send that message. Nevertheless, the consequences recommended by the Court are significantly less than what they would have been absent the indications of professional and employer-based repercussions that have already impacted and may continue to impact Mr. Patterson.

The Court assesses the following to be adequate sanctions as to Mr. Patterson, subject to the final determination by the District Judge:

1. That, unlike the anonymized language in the Order to Show Cause, the Court's findings be stated in a public and accessible Report and Recommendation and Order that expressly names Mr. Patterson and his law firm, and that these documents be submitted to publication in the official case reporter. This step adds general deterrent value, and helps ensure, in the hopefully unlikely event of repeated future violations specifically by Mr. Patterson or McGuire Woods, LLP, that future case participants, courts, and bar authorities will have access to this information.

2. That Mr. Patterson, within **twenty-one (21) days** of any Order adopting or modifying this Report and Recommendation (if any), pay the amount of $1,500 to the registry of the Court.[2] This penalty adds deterrent value, and is at least a partial

---

[2] Any check should include in the memo field a reference to the docket number of this case and the specific number of the Order adopting or modifying this Report and Recommendation (if any).

remedy in recognition of the taxpayer resources that have been expended by the Court in addressing this matter.

3.  Mr. Patterson does not need to be disqualified from this case on the following conditions: that supervisory counsel maintain an appearance and co-sign all papers in this case going forward, and, to the extent not already being provided, that an experienced paralegal or legal assistant be provided to Mr. Patterson to cite check all legal and factual citations in all submissions in this case.

Finally, however, the Court has some lingering hesitations before entirely closing this matter as to McGuire Woods, LLP (the "Firm"). Indeed, while the Court appreciates and believes Mr. Patterson's personal assurances of regret and embarrassment, the Court was surprised not to hear from the Firm as to what procedures and training it employs, and what resources it provides to support its lawyers in reasonably ensuring the accuracy of all legal and factual citations. After all, Federal Rule of Civil Procedure 11(c)(1) applies not just to the specific lawyer who signs an offending paper but also to his or her law firm.

In particular, the undersigned was surprised that a large law firm such as McGuire Woods did not already have paralegals, more junior lawyers, or other staff cite-checking submissions, and that an Order to Show Cause from a federal judge was required for such a commonplace step to be implemented in this case. Mr. Patterson's declaration states that the errors here occurred in the context of performing these tasks alone while juggling multiple and concurrent filing deadlines

in various cases. The Court was left wanting to hear more from the Firm itself as to what it does to help its lawyers and reasonably assure that they meet their obligations to the Court.

Thus, while the above recommendations close this matter in the undersigned's view as to Mr. Patterson individually, the Court further **ORDERS** that the Firm, by **December 31, 2025**, provide a sworn statement as to what training, oversight, procedures and resources it provides to or requires of individual lawyers, or will provide and require going forward, to reasonably ensure accurate factual and legal citations in submissions to the Court, and any other matters that the Firm wishes to explain.

### III. CONCLUSION AND RECOMMENDATION

The Court **RECOMMENDS** the imposition of sanctions against Mr. Patterson as set forth above for negligently submitting inaccurate citations to the Court, and **ORDERS** McGuire Woods, LLP to submit a supplemental statement as set forth above.

**IT IS SO ORDERED AND RECOMMENDED** this 4th day of December, 2025.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE