# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TIFFANY REGINA RINGER, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>BANK OF AMERICA, N.A., )<br>)<br>)<br>)<br>Defendant. )<br>_____ ) | Civil Action File No.<br>1:25-cv-03959-SEG-JSA<br><br>Removed from Douglas Superior<br>Case No. 25CV01110 |

## **DECLARATION OF J. TRACY WALKER IV**

Pursuant to 28 U.S.C. §1746, I, J. Tracy Walker IV, declare under penalty of perjury as follows:

1. I am over 18 years of age, of sound mind, and competent to testify to the matters set forth herein. I make this declaration based on my personal knowledge.

2. I am an attorney admitted to practice in the Commonwealth of Virginia and before the United States Supreme Court, the Supreme Court of Virginia, the United States Court of Appeals for the Third, Fourth, Sixth, and Ninth Circuits, and the United States District Courts for the Eastern District of Michigan, the Eastern District of Texas, and the Eastern and Western Districts of Virginia.

3. I am the managing partner of McGuireWoods LLP. I have been personally involved in addressing matters raised in the Court's November 6, 2025

1

Show Cause Order [Dkt. 10] and the Court's December 4, 2025, Order and Non-Final Report and Recommendation on Issue of Attorney Discipline [Dkt. 14].

4. The events as detailed in the Court's Show Cause Order and in Counsel's Response [Dkt. 12 and 12-1] are deeply troubling to me. The factual and legal citation errors in the briefs filed with the Court are unacceptable. It is the firm's responsibility to ensure that our attorneys file pleadings that are accurate, comply with all Court rules, and satisfy our professional obligations under applicable rules of professional responsibility. We failed to do so here, and I apologize to the Court on behalf of my firm.

5. I and others at my firm spent considerable time trying to understand how the errors in the briefs occurred and how our oversight system came up short. We also assessed what steps are needed to prevent any recurrence. As part of that effort, I closely reviewed the statements made in Counsel's Response and in the supporting declaration of Danny D. Patterson, Jr., a staff attorney at our firm who researched and drafted the briefs. I have spoken with Mr. Patterson, and I have also engaged in extensive discussions with firm attorneys who managed and supervised the work performed by Mr. Patterson.

6. In addition to these efforts, we have reviewed other pleadings drafted and filed by Mr. Patterson in this and other courts. Unfortunately, we have found a pattern of errors similar to the errors identified by the Court in this matter. We

have filed a motion seeking leave to file corrected briefs in a separate case pending in this Court, *Simmons v. Bank of America, Inc.*, Civil Action No. 1:25-cv-04718-JPB-JSA, and we anticipate filing other such motions.

7.  As background, Mr. Patterson was part of a team that handles a specific type of repeat, mortgage-related litigation. The caseload consists of voluminous, single-plaintiff claims, frequently with *pro se* litigants. We refer to this team as the portfolio team and these cases typically involve repetitive allegations and claims.

8.  Most of the lawyers on the portfolio team are staff attorneys hired specifically for that team. Some of the portfolio team staff attorneys have been with our firm for many years. The portfolio team is supervised by several partners, and an experienced senior staff attorney who has handled these matters for many years. The senior staff attorney typically reviews all pleadings for the matters he supervises for consistency and quality, and he is available to discuss legal strategy with the staff attorney who is primarily responsible for a particular case. Due to the repetitive nature of the cases and claims handled by the portfolio team, staff attorneys have some independence managing their caseload much like senior associates may have with less complex cases. The staff attorneys are provided with the same resources any other lawyer in the firm would have in managing their cases including paralegal support and research tools such as Lexis and Westlaw.

3

9. My firm hired Mr. Patterson on May 5, 2025, as a staff attorney to manage and defend portfolio cases in Georgia federal and state courts. Mr. Patterson obtained his law degree in 2013 and has been licensed to practice law in Georgia since 2016. Prior to joining McGuireWoods, Mr. Patterson worked at several large, reputable law firms, along with a prior in-house position and, briefly, as a solo practitioner. Mr. Patterson identified significant commercial litigation experience on his resume. Mr. Patterson also provided several prominent references. I have been advised that one of the references, when contacted, spoke well of Mr. Patterson and advised that Mr. Patterson did high quality work. Based on his tenure and experience, the partners responsible for the portfolio team believed Mr. Patterson was well positioned to handle portfolio cases with some independence and to effectively litigate those matters on behalf of the firm's clients.

10. Consistent with the practices described above, upon joining McGuireWoods, Mr. Patterson directly reported to a senior staff attorney, who reviewed drafts of his pleadings, and he worked with a dedicated paralegal assigned to his cases.

11. The senior staff attorney who supervised Mr. Patterson in this case reviewed and commented on the merits of various drafts of his briefs, but did not independently verify the legal citations nor confirm that Mr. Patterson had done so.

12. I am surprised and disappointed that Mr. Patterson, a lawyer who has practiced for nearly a decade, did not recognize and prioritize the importance of independently verifying the accuracy of every factual and legal citation before filing a brief. Unfortunately, that is what occurred in this case and ultimately our firm bears responsibility for it. We failed to ensure that Mr. Patterson's factual and legal citations were accurate and that he was following best practices in preparing and filing pleadings with the Court.

13. On November 18, 2025, I spoke at a firm meeting of all lawyers in our litigation practice groups. I explained briefly that a McGuireWoods lawyer had filed a brief with multiple, inaccurate citations and quotations and reminded everyone present of the critical importance of personally confirming the accuracy of every citation in every pleading filed with a court.

14. On December 8, 2025, I spoke to our firm's governing board about this incident. I assured them that we have taken immediate actions to prevent this issue from ever again occurring.

15. Separately, one of the partners responsible for the portfolio work sent a communication to every portfolio team member as follows:

> Effective immediately, before any pleadings or briefs can be filed, all citations or quotes from cases must be verified by a supervisor. We have to ensure accuracy of all citations and case quotations, no exceptions.

16. The responsible partners also recently met with the portfolio team. They advised the team that a firm partner, counsel or associate will be jointly responsible for each matter handled by a staff attorney, and that all pleadings and documents are to be reviewed and approved by the partner, counsel or associate assigned to that matter. They emphasized and reiterated the importance of ensuring that all pleadings and documents submitted to a court are accurate, including accurate legal citations, record citations, and quotations.

17. The portfolio team has also implemented a new cite check protocol. The protocol requires multiple reviews of all citations, quotations and attributions, including by a second person different than the original researcher and drafter. The protocol encourages attorneys and paralegals to make use of available resources through our firm's information services team. Attorneys and paralegals also may use firm approved research platforms including Westlaw and Lexis to check citations as an extra layer of review. However, electronic cite checking tools are not a substitute for manual review and confirmation of each citation.

18. We are continuing to evaluate the way our firm performs the portfolio work to ensure that every attorney receives sufficient support, supervision and oversight from senior lawyers and that every court submission is properly cite checked and verified before submission. These discussions are ongoing and remain the highest priority for our firm's leadership.

19. Beyond the portfolio team, we routinely provide training to the firm's attorneys on a wide range of topics, including legal writing. Significantly, the firm has been preparing a significant upgrade to our associate professional development program since the start of the year. The new program, branded McGuireWoods Academy, will be rolled out in January.

20. None of us are perfect. I have made mistakes in my career and hope I have learned important lessons from each of them. While mistakes invariably happen, I am unaware of any instance in the 17 years I have been involved in firm management as managing partner, deputy managing partner, and department chair where a brief rife with citation and quotation errors, much less several briefs, was filed with a court. The deeply unfortunate events that have occurred here are not, I believe, symptomatic of a broad failure to train, supervise, or offer appropriate support mechanisms to lawyers at McGuireWoods.

21. Nevertheless, we are doubling down on our efforts to ensure that all attorneys and paralegals on our litigation teams understand the importance of cite checking their work and taking advantage of the resources available at our firm to assist them. There is no excuse – whether time constraints, multiple deadlines, or mere haste – for failing to undertake this fundamental part of legal advocacy.

22. Mr. Patterson has been removed from work on pending matters for all clients while we continue to correct the issues that led to this incident. This is

regrettable for Mr. Patterson, but we believe it necessary under the circumstances. Ryan Buchanan, our Atlanta office managing partner, has entered an appearance in this case. Mr. Buchanan is a former United States Attorney for the Northern District of Georgia and has assisted Mr. Patterson and our firm in responding to the Court's orders.

23. The errors the Court identified in *Ringer* are atypical for the lawyers at our firm handling portfolio matters and for our firm generally. Our firm has handled the portfolio work for approximately fifteen years without any prior incident like what occurred here. We do not believe this incident reflects the quality of work performed for many years by hardworking and talented attorneys representing clients in similar matters. However, the errors here are unacceptable and required swift and comprehensive action to prevent recurrence.

24. This matter has been the highest priority for me since I learned of the Court's November 6, 2025 Show Cause Order. It strikes at the heart of what should be most important for every lawyer at our firm – our reputation. We strive to meet the highest standards of professionalism, integrity, excellence, and client service. In this instance, we fell far short of those standards. I share the regret and embarrassment that Mr. Patterson described in his Response and declaration and particularly regret the additional burdens it has placed on the Court.

25. I am available to travel to Atlanta to appear with our Atlanta managing partner Ryan Buchanan and hear directly from the Court regarding this matter, and to answer any additional questions the Court may have based on our firm's response.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of December 2025, in Richmond, Virginia.

_____
J. Tracy Walker IV
Managing Partner
McGuireWoods LLP